UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| JOSHUA ROBERT LAW,<br><br>                    Plaintiff,<br><br>          vs.<br><br>CORY AMBROSE, Corporal, South Dakota Department of Corrections, in his individual capacity; CAPTAIN VANDERAA, Officer in Charge Captain, South Dakota Department of Corrections, in his individual capacity; OIC ROWHER, Officer in Charge, South Dakota Department of Corrections, in his individual capacity; OIC VAN DEN TOP, Officer in Charge, South Dakota Department of Corrections, in his individual capacity,<br><br>                    Defendants. | 4:21-CV-04187-KES<br><br><br>ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND PROTECTIVE ORDER AND DENYING PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL |

Plaintiff, Joshua Robert Law, filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Dockets 1, 4. Law alleges that four correctional officers at the South Dakota State Penitentiary violated his Eighth Amendment right to be free from cruel and unusual punishment when he was placed naked in a solitary cell with no running water, operational toilet, or ventilation for twenty-two hours. Docket 4. Law's claim for damages against the defendants in their individual capacities survived screening. Docket 5 at 7. Defendants move for summary judgment, arguing that they are entitled to qualified immunity. Dockets 13, 14. Defendants also move for a protective order staying discovery

pending resolution of the qualified immunity issue. Docket 31. Law opposes defendants' motion for summary (Dockets 23, 24) and defendants' motion for protective order (Docket 36). Law moves for appointment of counsel. Docket 22.

## FACTUAL BACKGROUND[1]

Law was an inmate housed at Unit C at the South Dakota State Penitentiary (SDSP) in Sioux Falls, South Dakota on August 30 and 31, 2021. Docket 25 ¶ 1; Docket 26 ¶ 1. Body scanning is one of the processes prison staff uses to search for concealed contraband. Docket 19 ¶ 11; Docket 26 ¶ 11. Prison staff perform random body scans of inmates when they return to their housing unit. Docket 15 ¶ 7. SDDOC Policy 1.3.A.5 authorizes prison staff to conduct random body scan searches in which the inmate is "instructed to perform and follow all requirements of the body scan process." Docket 19 ¶ 10 (quoting SDDOC Policy 1.3.A.5); Docket 26 ¶ 10. "To maintain the security of the institution," prison staff may conduct a "thorough investigation and analysis of the body of an inmate identified as potentially concealing contraband internally." Docket 19 ¶11 (quoting SDDOC Policy 1.3.A.5); Docket 26 ¶ 11. Inmates identified as having internally concealed or possessed objects or substances will, pursuant to SDDOC Policy 1.3.A.5, be "hand pat searched and may be strip searched." Docket 19 ¶ 13 (quoting SDDOC Policy 1.3.A.5); Docket 26 ¶ 13. The inmate will be "given directives to remove the object or

---

[1] Because defendants move for summary judgment, the court recites the facts in the light most favorable to Law, the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Where the facts are disputed, both parties' averments are included.

substance. If the inmate fails or is unable to remove the suspected object or substance, the inmate will be placed in a dry cell." Docket 19 ¶ 14 (quoting SDDOC Policy 1.3.A.5); Docket 26 ¶ 14. The Warden, Deputy Warden, Officer in Charge, Shift Supervisor, or staff of equal or higher rank must approve placement in a dry cell. Docket 19 ¶ 15; Docket 26 ¶ 15.

On August 30, 2021, after working in the boiler room at the SDSP, Law returned to Unit C. Docket 25 ¶ 3. Defendant Ambrose performed three body scans when Law returned to Unit C. *Id.* ¶¶ 5-6. After the third scan, Law informed Ambrose that he has surgical mesh from a hernia repair in his lower right groin/abdomen area. *Id.* ¶ 6.

Law alleges that he is unaware whether the body scan machine produced an abnormal image. Docket 26 ¶ 4. Ambrose did not show Law any of the body scan images. Docket 25 ¶ 20. After performing the body scans, Ambrose placed Law in handcuffs and took him to the nurse's office. *Id.* ¶ 7. The nurse took Law's blood pressure. *Id.* Law's blood pressure was 190/110. *Id.* After the nurse took Law's blood pressure, Ambrose escorted him to the Jameson Prison Annex building. *Id.* ¶ 9. Ambrose asked Law if he had contraband inside his body, and Law answered that he did not. *Id.* ¶ 11. According to Law, Ambrose did not state that he believed that Law had any contraband inside his person. *Id.* ¶ 12.

Ambrose placed Law in a dry cell in the Identification Room of the Jameson Prison Annex. *Id.* ¶ 15. According to SDDOC policy, dry cells are located in a secure area away from other inmates that allows direct supervision

3

of the inmate through physical presence of staff or a security camera monitored by staff. Docket 19 ¶ 16. In accordance with Policy 1.3.A.5, Ambrose turned off the water to the toilet and sink in the cell. Docket 15 ¶ 17; Docket 25 ¶ 15. Ambrose took the clothing that Law was wearing and provided him two green padded cloths. Docket 25 ¶ 15. The padded cloths were a safety gown and blanket, *see* Docket 19 ¶ 31, but Law alleges that Ambrose did not instruct him what the padded cloths were. Docket 25 ¶ 15.  Ambrose took Law's clothing because Policy 1.3.A.5 provides that "property available to an inmate on dry cell status will be limited[]" to "ensure the retrieval of internally concealed contraband[.]" Docket 19 at ¶ 28 (quoting SDDOC Policy 1.3.A.5).

Ambrose provided Law a small white container to collect stool samples and informed Law that he would have to provide three stool samples for inspection before returning to regular housing. Docket 25 ¶¶15, 16.[2] An inmate will "normally be removed from the dry cell after three (3) consecutive bowel movements." Docket 19 ¶ 23 (quoting SDDOC Policy 1.3.A.5); Docket 26 ¶ 23. Policy 1.3.A.5 provides that prison staff, prior to placing an inmate in the dry cell, must search the dry cell for contraband. Docket 19 ¶ 21. Ambrose did not search the cell before placing Law in the cell. Docket 25 ¶ 16. Law also contends that Ambrose did not perform a hand pat search either before or after the body scans as required by Policy 1.3.A.5. Docket 25 ¶ 17; Docket 19 ¶ 13.

---

[2] Docket 25 contains two paragraphs numbered 16. This order will consider both paragraphs as a single paragraph numbered 16.

At approximately 11:00 a.m. on August 30, 2021, Law produced his first stool sample and placed the white container on the floor near the cell door. Docket 25 ¶ 21. A few minutes later, a correctional officer delivered a sack lunch. *Id.* ¶ 22. While Law ate the sack lunch, the white container with his stool sample remained on the floor of the cell. *Id.*

Defendant Vanderaa retrieved and examined the stool sample at approximately 1:30 p.m. *Id.* ¶ 23. Law contends that Vanderaa disposed of the first stool sample in a garbage can located outside the cell door. *Id.* Defendants contend that all of Law's stool samples were disposed of in either the toilet located near the ID Sargent's Office or, if unoccupied, in the other ID cell located near the dry cell. Docket 19 ¶ 51. Vanderaa returned the white container to Law after disposing of the first sample, and Law informed Vanderaa that he was ready to provide a second stool sample. Docket 25 ¶ 24. Law did not see Vanderaa again. *Id.* ¶ 25.

Law produced a second stool sample approximately ten minutes after Vanderaa had disposed of the first sample. *Id* ¶¶ 23, 26. Approximately an hour after producing the second stool sample, Law notified Correctional Officer Green, who is not a defendant, that he was waiting for someone to inspect his stool sample. *Id.* ¶¶ 26, 29. Approximately two hours later, Law notified an unidentified correctional officer that he was still waiting for someone to inspect his second stool sample. *Id.* ¶ 30. Law received a sack lunch around 5:00 p.m. and ate all of it while the second stool sample that he had produced at

approximately 1:40 p.m. remained on the floor of the cell in the small white container. *Id.* ¶ 31.

Defendant Rohwer entered the dry cell at approximately 6:30 p.m. and inspected the second stool sample. *Id.* ¶ 32. According to Law, Rohwer disposed of the second sample in the toilet in the dry cell, which could not be flushed because the water was off. *Id.* Rohwer denies that he disposed of the second stool sample in "the non-flushable toilet located in the dry cell[]" because doing so would have been inconsistent with SDDOC Policy 1.3.A.5. Docket 16 ¶¶ 28, 29. According to Rohwer, Law's stool samples would have been disposed of in the toilet located near the ID Sargent's Office or, if unoccupied, in the other ID cell located near the dry cell. *Id.* ¶ 33. Rohwer did not have any involvement with Law prior to inspecting the second stool sample at approximately 6:30 p.m. *Id.* ¶¶ 26-27. After Rohwer returned the empty white container to Law, Law informed Rohwer that he was ready to provide a third stool sample. Docket 25 ¶ 33.

Law produced his third stool sample at approximately 6:45 pm. *Id.* ¶ 34. According to Law, the third stool sample "was identical in size and mass to [his] second bowel movement." *Id.* When Rohwer entered the ID room at approximately 7:40 p.m., Law informed Rohwer that he had produced a third stool sample and that there were at least two flies "landing in [his] feces and on [his] sack lunch and also on [his] unclothed body." Docket 25 ¶ 35. Rohwer denies that Law complained to him about flies landing in his feces or landing or crawling on him. Docket 16 ¶ 47. Rohwer did not enter the dry cell or inspect

6

the third stool sample at this time. Docket 25 ¶ 35. Rohwer told Law that he would be back shortly. *Id.*

Rohwer returned at approximately 9:10 p.m. with Defendant Van Den Top. Docket 25 ¶ 36. According to Law, Van Den Top entered the dry cell and inspected the third stool sample. *Id.* Rohwer contends that he inspected the third stool sample and that the sample was "about the size of a finger-nail." Docket 16 ¶ 35. Law contends that after inspecting the third stool sample, Van Den Top disposed of the sample in the toilet in the dry cell, which could not be flushed because the water was off. Docket 25 ¶ 36. Van Den Top denies disposing of a stool sample in the non-flushable toilet in the dry cell and contends that doing so would have been inconsistent with SDDOC Policy 1.3.A.5. Docket 17 ¶¶ 29-30. Van Den Top returned the empty small white container to Law and left the dry cell. Docket 25 ¶ 36.

Rohwer informed Law that he would have to produce a fourth stool sample before he could return to regular housing. *Id.* ¶ 37. According to Rohwer, "it would have been irresponsible and unethical for [him], given the extremely small stool sample produced by Inmate Law, to have accepted the same and authorized his release from dry cell status." Docket 16 ¶ 36.

Between 7:00 and 8:00 a.m. on August 31, 2021, Law received a sack lunch. Docket 25 ¶ 38. The record does not indicate who provided this sack lunch to Law. When Law received the sack lunch, he contends that the second and third stool samples he had produced as well as all the urine he had

produced during the twenty hours he had been in the dry cell were in the non-flushing toilet. *Id.* ¶ 38.

After Law produced a fourth stool sample at approximately 9:00 a.m., he was provided with an orange jumpsuit and escorted to his regular housing in Unit C. *Id.* ¶ 39.

During the time that Law was in the dry cell, none of the prison staff provided him any water. *Id.* ¶ 40. During the time that he was housed in the dry cell, none of the prison staff inspected or removed any of the trash from the sack lunches that Law was provided. *Id.* ¶ 42.

The amended complaint alleges that the ventilation vent on the ceiling was painted over so as to prevent any air circulation from occurring. Docket 4 at 8. Ambrose, Rohwer, and Van Den Top do not recall that the ceiling vent was painted over or that Law complained about lack of ventilation in the dry cell. Docket 15 ¶ 45; Docket 16 ¶ 48; Docket 17 ¶ 48.

For three hours while Law was in the dry cell, several parole officers, including Kayla Oelkers, a female, entered the identification room where the dry cell is located. Docket 25 ¶ 27. The dry cell door consists of metal bars and clear plexi-glass plastic and did not fully obstruct the field of view in or out of the dry cell. *Id.* ¶ 28. Law alleges that Oelkers approached the cell door to see his physical appearance and read his name on the cell door. Docket 4 at 10. Law "belie[ves] the female parole officer, Kayla Oelkers, positively recognized [him.]" *Id.* Oelkers disputes Law's allegation. Docket 18 ¶¶ 6-7.

**DISCUSSION**

**I.    Motion for Appointment of Counsel**

Law moves for appointment of counsel to assist him with his case. Docket 22. He contends that he does not have access to "a real law library" and has only limited access to "legal typing sessions." *Id.* Defendants have not responded to Law's motion.

Although Law contends that he does not have access to "a real law library[,]" he has not alleged any violation of his constitutional right of access to the courts. *See id.* His memorandum in opposition to defendants' motion for summary judgment (Docket 24) cites numerous cases. Although Law contends that his access to legal typing sessions is limited, there is no requirement that Law type his submissions. Notably, Law's motion for appointment of counsel was handwritten. Docket 22. Lack of access to "a real law library" and limited access to legal typing sessions are not reasons to appoint counsel.

"A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). The court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). Law is not proceeding in forma pauperis and does not contend that he cannot afford counsel. In his motion, he agrees to accept "all financial obligations that will arise as any assistance and legal work is performed on [his] behalf." Docket 22. Because Law is not proceeding in forma pauperis, the court does not have discretion pursuant to 28 U.S.C.

§ 1915(e)(1) to request that an attorney represent him. Law's motion for appointment of counsel is denied.

## II.     Motion for Summary Judgment

### A.     Legal Standard

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by presenting evidence that there is no dispute of material fact or by showing that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To avoid summary judgment, "[t]he nonmoving party may not rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) (internal quotation omitted). The underlying substantive law identifies which facts are "material" for purposes of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no genuine issue of material fact." *Id.* at 247-48 (emphasis omitted).

Essentially, the availability of summary judgment turns on whether a proper jury question is presented: "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved . . . in favor of either party." *Id.* at 250. Prisoners who proceed pro se are entitled to the benefit of liberal construction at the pleading stage. *Quam v. Minnehaha Cnty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987) (per curiam). Nonetheless, the summary judgment standard set forth in Rule 56 of the Federal Rules of Civil Procedure remains applicable to prisoners proceeding pro se. *Id.* The district court is not required to "plumb the record in order to find a genuine issue of material fact." *Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996).

Courts must remain sensitive, however, "to the special problems faced by prisoners attempting to proceed pro se in vindicating their constitutional rights, and [the Eighth Circuit does] not approve summary dismissal of such pro se claims without regard for these special problems." *Nickens v. White*, 622 F.2d 967, 971 (8th Cir. 1980). "[W]hen dealing with summary judgment procedures technical rigor is inappropriate where . . . uninformed prisoners are involved." *Ross v. Franzen*, 777 F.2d 1216, 1219 (7th Cir. 1985) (citation omitted).

**B.   Qualified Immunity Standard**

Defendants argue they are entitled to qualified immunity because their actions did not violate Law's Eighth Amendment rights. Docket 14. To determine whether a government official is entitled to qualified immunity, the court considers (1) whether the facts alleged, viewed in the light most favorable to plaintiff, demonstrate the official's conduct violated a constitutional right, and (2) whether the constitutional right was clearly established at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The court may consider the elements in any order, and if either of the elements is not met, then the official is entitled to qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"[T]he Constitution 'does not mandate comfortable prisons'; it prohibits 'inhumane ones.'" *Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). The Supreme Court has instructed that only "extreme deprivations" that deny "the minimal civilized measures of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (internal quotation omitted). Basic human needs, according to the Supreme Court, include "food, clothing, shelter, medical care, and reasonable safety[.]" *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (internal quotation omitted).

According to the Eighth Circuit:

> To establish that a prisoner's conditions of confinement violate the Eighth Amendment, the prisoner must show that (1) the alleged deprivation is, "objectively, sufficiently serious," resulting "in the

12

> denial of the minimal civilized measure of life's necessities," and (2) that the prison officials were deliberately indifferent to "an excessive risk to inmate health or safety," meaning that the officials actually knew of and disregarded the risk.

*Williams,* 49 F.3d at 445 (quoting *Farmer,* 511 U.S. at 834, 837). A "critical factor" in the Eighth Amendment analysis is the length of time a prisoner is subjected to the allegedly inhumane conditions. *Featherston v. Ball,* 2020 WL 12582955, at *4, 2020 U.S. Dist. LEXIS 260245, at *12 (E.D. Ark. Dec. 4, 2020) (citing *Smith v. Copeland,* 87 F.3d 265, 269 (8th Cir. 1996) (stating that "[c]onditions such as a filthy cell that may be tolerable for a few days are intolerably cruel for weeks or months")).

Law must demonstrate that each defendant is individually involved in the alleged unconstitutional acts to be liable under § 1983. *Heartland Acad. Cmty. Church v. Waddle,* 595 F.3d 798, 805-06 (8th Cir. 2010); *see also White v. Jackson,* 865 F.3d 1064, 1076 (8th Cir. 2017) ("[A] plaintiff must be able to prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009))). "Liability for damages for a federal constitutional tort is personal, so each defendant's conduct must be individually assessed." *Wilson v. Northcutt,* 441 F.3d 586, 591 (8th Cir. 2006) (citing *Doran v. Eckold,* 409 F.3d 958, 969 (8th Cir. 2005) (en banc)).

### C.   Defendant Ambrose

Ambrose placed Law in the dry cell. Docket 25 ¶ 15. There is no evidence that any of the other defendants were involved in the decision to place Law in

the dry cell. Docket 25 ¶¶ 23-25; Docket 16 ¶ 26; Docket 17 ¶ 27. Vanderaa, Rohwer and Van Den Top are entitled to qualified immunity to the extent Law alleges that placement in the dry cell violated the Eighth Amendment. *See Grayson v. Ross*, 454 F.3d 802, 809-10 (8th Cir. 2006) (stating that an officer not involved in the decision to accept a prisoner at the jail could not have violated the prisoner's constitutional rights based on the intake and is entitled to summary judgment for the intake).

While "administrative confinement in a dry cell is unpleasant and often unsanitary, so long as the conditions of that confinement are not foul or inhuman, and are supported by some penological justification, they will not violate the Eighth Amendment." *Thomas v. Tice*, 948 F.3d 133, 139 (3d Cir. 2020) (citing *Young v. Quinlan*, 960 F.2d 351, 364 (3d Cir. 1992), *superseded by statute on other grounds as stated in Nyhuis v. Reno*, 204 F.3d 65, 71 n.7 (3d Cir. 2000)). Law contends that placing him in the dry cell did not serve any legitimate penological purpose. Docket 24 at 7-8. Before placing Law in the dry cell, Ambrose did not inform Law that he believed that Law had any contraband inside his person. Docket 25 ¶ 12. Law also contends that Ambrose did not comply with the requirements of Policy 1.3.A.5 before placing him in a dry cell. Docket 24 at 8. Ambrose did not perform a hand pat down search, direct Law to produce or deliver any contraband, or search the dry cell before placing Law in the cell. Docket 25 ¶¶ 13, 16, and 17.

SDDOC Policy 1.3.A.5 provides that an "inmate may be placed in a dry cell whenever a 'reasonable belief' exists that he may have 'ingested or

14

internally inserted an object, substance or contraband into their body cavity.'"
Docket 33 ¶ 12 (quoting SDDOC Policy 1.3.A.5). Ambrose has provided to the
court and to Law the three body scan images he obtained on August 30, 2021,
with the areas circled that he identified as "abnormal" and possibly indicative
of contraband. *Id.* ¶ 11; Docket 32 at 14; Dockets 32-1, 32-2, 32-3. Based on
these images, Ambrose had a reasonable belief that Law may have ingested
contraband. Docket 33 ¶ 12. Although Law alleges otherwise, he has not
submitted any evidence to dispute that Ambrose had a reasonable belief that
Law may have ingested contraband.

Law has submitted evidence that Ambrose did not comply with all
requirements of Policy 1.3.A.5 before placing him in a dry cell. The issue is
whether there was a legitimate penological justification for placing Law in the
dry cell (i.e. reasonable suspicion that Law had ingested contraband) not
whether Ambrose complied with all the requirements of a prison policy. *Hill v.
Walker*, 718 F. App'x 243, 250 (5th Cir. 2018) ("[A] prison official's failure to
follow the prison's own . . . regulations does not constitute a [constitutional]
violation." (second alteration and omission in original) (quoting *Myers v.
Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996))); *Beatty v. Warren*, 2023 WL
149111, at *4, 2023 U.S. Dist. LEXIS 3949, at *11 (W.D.N.C. Jan. 10, 2023)
("[A] mere policy violation does not rise to the level of a § 1983 claim absent a
plausible allegation of an underlying constitutional violation."); *Hill v. Missouri*,
2016 WL 687827, at *1, 2016 U.S. Dist. LEXIS 20079, at *1 (E.D. Mo. Feb. 19,
2016) ("A violation of prison policy is not actionable under § 1983 absent an

independent constitutional violation."); *see also Luckert v. Dodge County*, 684 F.3d 808, 819 (8th Cir. 2012) (violating a prison policy does not automatically constitute deliberate indifference).

According to Law's affidavit, while he was an inmate, he did not ingest any prohibited object or contraband. Docket 25 ¶ 47. Directing Law to produce or deliver contraband before placing him in the dry cell would have not avoided the placement. That Ambrose did not show Law the body images or inform Law that he believed that Law had any contraband inside his person does not mean that Ambrose did not have reasonable suspicion that he had ingested contraband. Finally, that no contraband was found before Law was released from the dry cell does not create a genuine dispute whether Ambrose had a reasonable suspicion that Law had ingested contraband based on the body scans he performed. *Milliken v. Maylin*, 2019 WL 7282478, at *5, 2019 U.S. Dist. LEXIS 221673, at *13 (N.D. Cal. Dec. 27, 2019) ("That no contraband was ultimately retrieved does not mean that there is a genuine dispute as to whether they saw an indication of contraband on the scan[.]"). As in *Milliken*, Ambrose submitted the scans in support of his motion for summary judgment, and the scans are consistent with his affidavit. *See* Docket 33 ¶¶ 11, 12; 2019 WL 7282478, at *5, 2019 U.S. Dist. LEXIS 221673, at *13.

In his response to defendants' motion for summary judgment, Law contends that the safety gown that Ambrose provided is not an acceptable form of clothing for a grown man to wear in public. Docket 24 at 4. Law also alleges that he should have been permitted to keep his underpants or boxers because

16

SDDOC Policy 1.3.A.5 does not specifically provide that all clothing will be taken before an inmate is placed in a dry cell. *Id.* at 5. When considering whether defendants are entitled to qualified immunity, the issue is not whether defendants have correctly interpreted or followed a prison policy. The issue is whether the facts, when construed in the light most favorable to Law, establish a constitutional violation. Confining an inmate in a dry cell with a safety or paper gown does not violate the Eighth Amendment. *Garcia v. Currie*, 674 F. App'x 432, 433 (5th Cir. 2017) (per curiam) (holding that placing an inmate in dry cell isolation for forty-four hours clothed in only a paper gown was "harsh and restrictive" but "reasonably related to the legitimate penological interest of curtailing the influx of illicit drugs[.]"); *Turner v. Warden, GDGP*, 650 F. App'x 695, 698, 701-02 (11th Cir. 2016) (per curiam) (placing an inmate in a strip cell for ten days with only a paper gown and booties to wear does not rise to the level of cruel and unusual punishment); *Soto v. Bertrand*, 328 F. App'x 331, 333 (7th Cir. 2009) (requiring an inmate to wear a paper gown rather than regular prison clothing while in administrative confinement for five days is not cruel and unusual punishment); *Smith v. Copeland*, 892 F. Supp. 1218, 1229-30 (E.D. Mo. 1995) (placing a pretrial detainee in an isolation cell for forty-eight hours and providing only a paper gown and paper blanket is not a constitutional violation).

The Eighth Circuit has held that temporary confinement in a cell without clothing, a mattress, or running water does not violate the Eighth Amendment. *O'Leary v. Iowa State Men's Reformatory*, 79 F.3d 82, 83-84 (8th Cir. 1996) (per

17

curiam) (holding that four consecutive days without clothing, a mattress or bedding was not a constitutional violation); *Seltzer-Bay v. Delo*, 66 F.3d 961, 963-64 (8th Cir. 1995) (finding no constitutional violation when inmate was in a strip cell for two days without clothing, bedding, or running water and cold air blowing on him).

Other courts have also found that temporary confinement in a dry cell does not violate a prisoner's Eighth Amendment right. *See Stewart v. Wright*, 1996 WL 665978, at *1-2, 1996 U.S. App. LEXIS 30013, at *5-6 (7th Cir. Nov. 14, 1996) ("Dry cell conditions such as not being able to flush the toilet or brush teeth are mere inconveniences. . . . [I]t is well settled that conditions which are temporary and do not result in physical harm are not [constitutionally] actionable[.]") (citations omitted); *Featherston,* 2020 WL 12582955, at *4-5, 2020 U.S. Dist. LEXIS 260245, at *11-13 (holding that 7 days in a "dry cell" when prisoner not allowed to flush his toilet does not rise to the level of an Eighth Amendment violation).

Defendant Ambrose is entitled to qualified immunity for placing Law in a dry cell, directing him to remove his clothing and providing a safety gown and blanket, and shutting the water off in the cell.

## D.   Defendant Vanderaa

According to the amended complaint and Law's affidavit, Vanderaa's involvement was limited to examining and disposing of Law's first stool sample. Docket 4 at 9; Docket 25 ¶¶ 23-25. While there is evidence that Vanderaa did not follow standard procedures and dispose of the stool sample in the toilet

located near the ID Sargent's Office or, if unoccupied, in the ID cell located near the dry cell, it is undisputed that Vanderaa did not use the toilet in the dry cell to dispose of Law's first stool sample. According to Law, Vanderaa disposed of the stool sample in a garbage can located by the outside of the dry cell door.  Docket 25 ¶ 23. Because he did not dispose of Law's first stool sample in the non-flushable toilet in the dry cell, Vanderaa is entitled to qualified immunity on Law's claim that he was forced to eat, sleep and breathe approximately five feet away from the non-flushable toilet that contained his bowel movements.

### E.   Defendants Rohwer and Van Den Top

There are factual disputes regarding Rohwer's and Van Den Top's involvement. Whether Rohwer disposed of Law's second stool sample in the non-flushable toilet in the dry cell is disputed. Who inspected Law's third stool sample and whether the third sample was disposed of in the non-flushable toilet are disputed. The size of Law's third stool sample is disputed. Whether Law reported to Rohwer that there were flies landing in his feces or landing or crawling on him is disputed. "At the summary judgment stage, the court should not weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996) (citing *Anderson*, 477 U.S. at 249). "[T]he court's function is to determine whether a dispute about a material fact is genuine, that is, whether a reasonable jury could return a verdict for the nonmoving party based on the evidence." *Id.* at 1377 (citing *Anderson*, 477 U.S. at 248).

19

The factual disputes regarding Rohwer's and Van Den Top's involvement are not genuine and do not preclude summary judgment. Even if the facts set forth in Law's affidavit are accepted as true, Law has not established an Eighth Amendment violation.

According to Law, Rohwer and Van Den Top each disposed of a stool sample in the toilet in the dry cell that did not flush, which meant that Law had to sleep and eat in close proximity to his body waste for some portion of the twenty-two hours he was in the dry cell. The court acknowledges that these alleged conditions were unpleasant and uncomfortable, but the conditions were not of sufficient duration to rise to the level of an Eighth Amendment violation. *See Gilblom v. Gillipsie*, 435 F. App'x 165, 166-67, 169 (3d Cir. 2011) (finding that thirty-six hours in a dry cell in close proximity to prisoner's feces, which prison officials refused to inspect, failed to meet the objective component of the Eighth Amendment); *Drumgo v. Reese*, 2022 WL 4295442, at *19, 2022 U.S. Dist. LEXIS 91125, at *58-59 (M.D. Pa. May 20, 2022) (holding that a one-day confinement in a dry cell in which the prisoner could not wash his hands or perform any sanitary acts before eating, was forced to urinate in a plastic milk carton that resulted in spillage on the front of his paper jumpsuit, and had his feet shackled and hands cuffed does not rise to the level of an Eighth Amendment violation); *Beard v. Day*, 2018 WL 10345759, at *3, 2018 U.S. Dist. LEXIS 233533, at *5 (E.D. Ark. Dec. 13, 2018) (finding that a five-day placement in a dry cell when prisoner is required to defecate in a bucket instead of a toilet is a temporary deprivation that is not sufficiently serious to

satisfy the objective component of the Eighth Amendment); *Diaz v. Cate*, 2013 WL 4479262, at \*2,\*4, 2013 U.S. Dist. LEXIS 118113, at \*6, \*14-15 (N.D. Cal. Aug. 20, 2013) (finding that five days in a dry cell with a portable toilet and buckets for defecating failed to show "an objective and sufficiently serious deprivation to implicate the Eighth Amendment"); *Frye v. Oleshea*, 2012 WL 951318, at \*1-2, \*6, 2012 U.S. Dist. LEXIS 37745, at \*4-5, \*15-16 (N.D. Cal. Mar. 20, 2012) (holding that forty-eight hours in a dry cell in restraints with a bucket for prisoner to relieve himself did not rise to a constitutional violation); *Jihad v. Wright*, 1997 WL 471345, at \*2, 1997 U.S. App. LEXIS 21624, at \*7-8 (7th Cir. Aug. 14, 1997) (affirming dismissal of claim arising from placement in a dry cell for seventy-two hours and noting that while "conditions incident to preserving all bodily excrement for examination are undesirable," temporary conditions, including "discomfort from the smell of the unflushed toilet[,]" are not sufficiently serious to violate the Eighth Amendment).

The authorities Law cites in opposition to defendants' motion for summary judgment are distinguishable. Docket 24 at 3-4, 7. In *LaReau v. MacDougall*, the plaintiff was confined to a strip cell for five days, and the only facility for disposing of human waste was a "Chinese toilet" that consisted of "merely a hole in the floor in the corner of the cell covered with a grate." 473 F.2d 974, 977 (7th Cir. 1972). As Law notes, the court stated that "[c]ausing a man to live, eat and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted." *Id.* at 978. The length of LaReau's confinement (five days) as well as the overall conditions of

21

confinement are not comparable to this case. LaReau was "subject to near total sensory deprivation[.]" *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989) (citing *LaReau*, 473 F.3d at 976-78). As the court recognized, the conditions to which LaReau was exposed "went beyond mere coerced stagnation[,]" "threatening . . . [his] sanity and severing his contacts with reality by placing him in a dark cell almost continuously day and night." *LaReau*, 473 F.2d at 978. Law does not allege sensory deprivation. Further, LaReau was placed in the strip cell as punishment for possessing contraband, *id.* at 977, and not because of any suspicion that he had ingested contraband, so there was no legitimate penological justification to deny him access to a functional toilet.

In *Knop v. Johnson*, 667 F. Supp. 467, 477-78 (W.D. Mich. 1987), the court considered the constitutionality of housing prisoners in general population in cells that did not contain toilet facilities. The court did not consider the constitutionality of placing a prisoner in a dry cell or strip cell for a short period of time when there is legitimate penological reason to do so, such as suspected ingestion of contraband.

In *Williams v. Delo*, the Eighth Circuit held that a temporary four-day deprivation similar to that alleged by Law did not rise to the level of a constitutional violation. *See* 49 F.3d at 446-47. Williams was placed in a "strip cell" for four days. *Id.* at 444. He was forced to remove his clothes, and the mattress was removed. *Id.* The cell had a toilet and sink, but the water was shut off. *Id.* Williams could not flush the toilet or wash his hands. *Id.* The Eighth Circuit held that the defendants were entitled to qualified immunity

22

because there was no showing that confining Williams in a strip cell for four days denied him "the minimal civilized measures of life's necessities" or that the prison officials were deliberately indifferent to "an excessive risk to inmate health or safety." *Id.* at 447; *see also Copeland*, 87 F.3d at 268 (stating that allegations that pretrial detainee was subjected to an overflowed toilet and "made to endure the stench of [his] own feces and urine" for four days is a "de minimis imposition that does not implicate constitutional concerns." (alteration in original)).

Although there is a factual dispute regarding the size of Law's third stool sample, this dispute does not mean that Rohwer is not entitled to qualified immunity for requiring Law to provide another sample before being released from the dry cell. Policy 1.3.A.5 provides that a prisoner will "normally be removed from the dry cell after three (3) consecutive bowel movements." Docket 19 ¶ 23. In this case, Rohwer required Law to produce a fourth stool sample for security purposes. *Id.* ¶ 24. Law has not provided any evidence to dispute this. Docket 26 ¶ 24. Rather, Law again asserts that there was not a legitimate penological justification to place him in the dry cell. *Id.* For the reasons previously stated, there is no dispute that Ambrose had reasonable suspicion that Law may have ingested contraband. On the basis of the record evidence, the court is unwilling to second guess Rohwer's judgment that requiring a fourth stool sample was necessary for security purposes. *See Hamilton v. Schriro*, 74 F.3d 1545, 1550 (8th Cir. 1996) ("[I]ssues of prison management are, both by reason of separation of powers and highly practical considerations

23

of judicial competence, peculiarly ill-suited to judicial resolution, and . . . accordingly courts should be loath to substitute their judgment for that of prison officials and administrators." (omission in original) (internal quotations omitted)).

Law has presented evidence that he complained to Rohwer "that there were at least (2) flies landing in [his] feces and on [his] sack lunch and also on [his] unclothed body." Docket 25 ¶ 35. "Conditions of confinement that cause mere discomfort or inconvenience do not amount to cruel and unusual punishment." *Brakeall v. Stanwick-Klemik*, 4:17-CV-04101-LLP, 2020 WL 1180727, at *1, 2020 U.S. Dist. LEXIS 42319, at *36 (D.S.D. Mar. 11, 2020) (citation omitted). "[R]outine discomfort is 'part of the penalty that criminal offenders pay for the offenses against society[.]' " *Hudson*, 503 U.S. at 9 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The presence of two flies in the dry cell is not an extreme deprivation required to state an Eighth Amendment claim. *See, e.g., Brooks v. Daniels*, 2012 WL 5866453, at *2, 2012 U.S. Dist. LEXIS 164561, at *6-7 (W.D. Ky. Nov. 19, 2012) ("While unpleasant, the alleged conditions of having insects in a cell is not below the constitutional standard of the minimal civilized measure of life's necessities." (internal quotations omitted)); *Williams v. Philips*, 2012 WL 3704749, at *6, 2012 U.S. Dist. LEXIS 121519, at *20 (E.D. Cal. Aug. 27, 2012) (holding that the mere presence of annoying insects does not rise to an Eighth Amendment violation and stating that "the burden of swatting 10 or even 25 flies per day is not cruel and unusual punishment" (citation omitted)); *Dale v. Dooley*, 4:14-CV-04003-

24

LLP, 2015 U.S. Dist. LEXIS 193747, at \*92 (D.S.D. July 24, 2015) (holding that isolated instances of rodents in the kitchen area were only short-lived and insufficient to state a claim under the Eighth Amendment). *Compare Smith v. Dart*, 803 F.3d 304, 312 (7th Cir. 2015) (recognizing that prolonged exposure to pest infestations can give rise to an Eighth Amendment violation).

Despite the factual disputes regarding Rohwer's and Van Den Top's involvement, they are entitled to qualified immunity. Even accepting as true the facts set forth in Law's affidavit, Law has not alleged conditions that violate the Eighth Amendment.

### F.    Allegations Against All Defendants

#### 1.    Lack of Access to Drinking Water

During the time that Law was in the dry cell, none of the prison staff provided him any water. Docket 25 ¶ 40. Ambrose, Rohwer, and Van Den Top do not recall Law asking for anything to drink during the time that Law was in the dry cell. Docket 15 ¶ 30; Docket 16 ¶ 38; Docket 17 ¶ 39. If Law had asked for water to drink, Rohwer and Van Den Top would have accommodated the request in accordance with SDDOC Policy 1.3.A.5. Docket 15 ¶ 32; Docket 16 ¶ 38; Docket 17 ¶ 39. Policy 1.3.A.5 provides, "There will be no interruption of meals, sufficient hydration or medicine intake" while an inmate is in a dry cell. Docket 15 ¶ 32; Docket 16 ¶ 38; Docket 17 ¶ 39.

Defendants contend that it is not uncommon for sack lunches provided to inmates in a dry cell to include a container of milk. Docket 19 ¶ 36. While Law correctly notes that "the commonality of what may or may not accompany

a sack lunch . . . is not in any way a definitive statement concerning the contends of what accompanied the sack lunches which [he] received[,]" *see* Docket 26 ¶ 36, Law does not provide any evidence that the sack lunches he was provided did not include a container of milk. Further, Law does not provide any evidence that he requested that defendants provide him water. In the absence of any evidence that Law requested water, the fact that defendants did not offer or provide water during the time that Law was confined in the dry cell does not violate the Eighth Amendment. *See Stephens v. Carter Cnty. Jail*, 816 F.2d 682, 1987 WL 36997, at *1 (6th Cir. Apr. 10, 1987) (stating that confinement in a holding cell for twenty hours without water does not violate the Eighth Amendment). Defendants are entitled to qualified immunity on Law's claim that he was not provided water.

### 2.   Lack of Ventilation

Law contends that the "ventilation vent on the ceiling was painted over so as to prevent any air circulation from occurring." Docket 4 at 8. Law has not submitted any evidence to support this allegation. *See* Docket 25. Further, Law has not presented any evidence that defendants were aware of any ventilation problem in the dry cell or that he complained to defendants about lack of ventilation. Docket 15 ¶ 45; Docket 16 ¶ 48; Docket 17 ¶ 48. Law does not dispute that no other inmates have complained about lack of ventilation in the dry cell. Docket 19 ¶ 57; Docket 26 ¶ 57. Because Law cannot demonstrate that defendants were deliberately indifferent to any ventilation issue in the dry cell, defendants are entitled to qualified immunity on Law's claim alleging lack

26

of ventilation. *See Wilson v. Heyns*, 2014 WL 4388593, at *2, 2014 U.S. Dist.
LEXIS 124526, at *4 (W.D. Mich. Sept. 5, 2014) (recognizing that absent
extreme conditions raising serious health risks, courts routinely hold that
claims concerning ventilation are insufficient to state an Eighth Amendment
violation (citations omitted)).

### 3.    Accumulating Trash

During the time that he was housed in the dry cell, none of the prison
staff inspected or removed any of the trash from the sack lunches that Law was
provided. Docket 25 ¶ 42. Rohwer did not immediately collect Law's sack lunch
because Law "was barely eating the food provided." Docket 16 ¶ 45. Rohwer
contends that he encouraged Law to eat so that Law could have a bowel
movement and "speed up the process" of being released from the dry cell. *Id.*
Rohwer and Van Den Top do not recall that Law complained about trash
accumulating in the dry cell or requested disposal of trash in the cell. Docket
17 ¶¶ 44, 46; Docket 16 ¶¶ 43, 46.

Law contends that defendants violated SDDOC policy 1.3.A.5, which
provides that "[t]rash will not be allowed to accumulate in the cell." Docket 24
at 5 (quoting Dockets 15, 16, 17). As previously noted, violation of a prison
policy, in and of itself, it not unconstitutional. Permitting the trash from three
sack lunches to accumulate over a period of twenty-two hours is not
unconstitutional. *Whitnack v. Douglas County*, 16 F.3d 954, 956, 958 (8th Cir.
1994) (holding that intolerable, filthy conditions, including a toilet covered with
dried feces, a sink covered with hair and vomit, floors covered with garbage and

rotting food, and walls covered with dried human mucus, that lasted less than twenty-four hours before adequate cleaning supplies were made available, were insufficient to give rise to a constitutional violation); *Metcalf v. Veita*, 1998 WL 476254, at *1-2, 1998 U.S. App. LEXIS 18266, at *3-5 (6th Cir. Aug. 3, 1998) (stating that allegations of insufficient showers, trash removal, cell cleaning, and clean laundry for eight days on "top lock" does not state a claim for violation of the Eighth Amendment). Defendants are entitled to qualified immunity on Law's claim that trash accumulated in the dry cell.

### 4. Female Parole Officer Observing Law

In his affidavit, Law states that for three hours while he was in the dry cell, several parole officers, including Kayla Oelkers, a female, entered the identification room where the dry cell is located. Docket 25 ¶ 27. The dry cell door consists of metal bars and clear plexi-glass plastic and did not fully obstruct the field of view in or out of the dry cell. *Id.* ¶ 28. Law alleges that Oelkers approached the cell door to see his physical appearance and read his name on the cell door. Docket 4 at 10. Law "belie[ves] the female parole officer, Kayla Oelkers, positively recognized [him.]" *Id.* Law has not cited to any evidence to support his belief that Oelkers recognized him. Oelkers disputes Law's allegation. Docket 18 ¶¶ 6-7. Even assuming that Law had come forward with some evidence to support his allegation, Oelkers is not a defendant. Law does not explain how the named defendants were individually involved and responsible for Oelkers's alleged violation. Because there is no evidence that they were involved in Oelkers's alleged violation, defendants are entitled to

qualified immunity on Law's claim that a female parole officer entered the identification room and observed Law in the dry cell.

### 5.  Not Rechecking Law's Blood Pressure

According to Law, his blood pressure immediately before he was confined in the dry cell was 190/110. Docket 25 ¶ 7. During the time that Law was in the dry cell, the medical staff did not recheck his blood pressure. *Id.* ¶ 41. None of the medical staff are defendants, and there is no evidence that the Unit C nurse or any other member of the medical staff instructed any of the defendants that Law's blood pressure should be rechecked. "Separately-taken high [blood pressure] readings do not indicate a medical condition 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention.' " *Fourte v. Faulkner County*, 746 F.3d 384, 389 (8th Cir. 2014) (quoting *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). Defendants are entitled to qualified immunity on any claim that they were deliberately indifferent to a serious medical need because Law's blood pressure was not rechecked during his confinement in the dry cell.

### G.  Showing of Physical Injury Under the PLRA

The Prison Litigation Reform Act (PLRA] mandates that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury[.]" 42 U.S.C. § 1997e(e). The Eighth Circuit interprets § 1997e(e) "as limiting recovery for mental or emotional injury in all federal actions brought by prisoners." *McAdoo v. Martin*, 899 F.3d 521,

525 (8th Cir. 2018) (quoting *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004). To recover more than nominal damages, "a prisoner must allege or prove more than mental or emotional injury." *Id.* Further, the PLRA "require[s] more than a de minimis physical injury." *Id.* (citing *Smith v. Moody*, 175 F.3d 1025, 1025 (8th Cir. 1999) (unpublished per curiam)).

Law alleges that he has experienced "[p]sychological trauma, mental anguish, and humiliation." Docket 4 at 7; *see also* Docket 25 ¶ 44 (alleging that he "continue[s] to experience intense feelings of mental anguish, embarrassment, and humiliation from the time that [he] was housed in the dry cell on August 30, 2021 and August 31, 2021[.]"). Law seeks punitive damages of $528,000, which is $6,000 per defendant, per hour, for the duration of his confinement in the dry cell. Docket 4 at 7. Because Law alleges only mental or emotional injury and does not allege a separate physical injury, § 1997e(e) bars his claim for damages.

## III.   Motion for Protective Order

After defendants filed their motion for summary judgment, Law served a request for discovery. Docket 25-1. Defendants move for a protective order staying discovery pending resolution of the qualified immunity defense that is the basis of their motion for summary judgment. Docket 31. Law opposes defendants' motion for protective order (Docket 36) and contends that without the requested discovery, he "is unable to present evidence and facts essential to justify his opposition" to defendants' motion for summary judgment. Docket 37 ¶ 2.

30

"Qualified immunity is an immunity from suit, not simply from liability[,]" and protects governmental officials from discovery. *Janis v. Biesheuvel*, 428 F.3d 795, 800 (8th Cir. 2005) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell*, 472 U.S. at 526 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Although defendants moved for a protective order, they provided to the court and Law copies of the body scan images Ambrose performed on August 30, 2021. Docket 32 at 13-14. Defendants have also established that the video footage that Law requested was purged, prior to Law's request, as part of the facility's routine operations. Docket 34 ¶¶ 8-10. Thus, Law's outstanding discovery requests are limited to the defendants' time cards for August 30, 2021, the body scan image performed on August 31, 2021, a photograph of the air vent in the ceiling of the dry cell, and a complete copy of SDDOC Policy 1.3.A.5. *See* Docket 32 at 1-2.

Law submitted a detailed affidavit in opposition to defendants' motion for summary judgment specifying the time each of his sack lunches was delivered, the time he produced each stool sample, and the time defendants inspected and disposed of the stool samples. *See* Docket 25. Law has not established that defendants' time cards are essential for him to oppose the summary judgment motion. *See* Fed. R Civ. P. 56(d); *Janis,* 428 F.3d at 801 (finding no abuse of discretion is denying plaintiff's motion to stay resolution of a summary

judgment motion when plaintiff failed to demonstrate that additional discovery might reveal additional information not already available to the plaintiff). Similarly, Law has not established that a photograph of the air vent in the ceiling of the dry cell is essential for him to oppose the summary judgment motion. Law has not alleged that the lack of ventilation caused extreme conditions that raised serious health issues, which is necessary for Law to prevail on this claim. And a photograph of one air vent would not be sufficient proof. A complete copy of the policy the defendants referenced in their affidavits is not essential for Law to oppose the summary judgment motion. Violation of a prison policy does not give rise to a § 1983 claim. The court also agrees that production of the complete policy could raise security concerns.

Law seeks a copy of the August 31, 2021, body scan to visually compare what constitutes a sufficient belief to place an inmate on dry cell status with what constitutes a sufficient belief to release an inmate from dry cell status. Docket 37 ¶ 9. Ambrose has presented competent evidence that there was a legitimate penological reason to place Law in a dry cell on August 30, 2021. Law has not come forward with any evidence to support his allegation that there was not. The August 31, 2021, body scan images are not relevant when determining whether Ambrose had a legitimate penological reason to place Law in a dry cell on August 31, 2021. Law admits that he is "not trained to perform body scans, nor . . . qualified to read or interpret body scan images." Docket 25 ¶ 19. Given this admission, Law has not met his burden of demonstrating how the August 31, 2021, body scan image might have helped him oppose

defendants' motion for summary judgment. For these reasons, defendants'
motion for protective order (Docket 31) is granted.

Thus, it is ORDERED:

1.    That Law's motion for appointment of counsel (Docket 22) is
      denied.

2.    That defendants' motion for summary judgment (Docket 13) is
      granted. Defendants are entitled to summary judgment in their
      favor on all claims.

3.    That Law's motion to oppose summary judgment (Docket 23) is
      denied.

4.    That defendants' motion for protective order (Docket 31) is granted.

Dated March 13, 2023.

                        BY THE COURT:

                        /s/ *Karen E. Schreier*
                        KAREN E. SCHREIER
                        UNITED STATES DISTRICT JUDGE

33